**Brian Lee CHERRIX, Petitioner,**

v.

**William Page TRUE, Warden, Sussex I State Prison Respondent.**

**No. CIV.A. 00–1377.**

United States District Court, E.D. Virginia, Alexandria Division.

May 29, 2002.

Michele Jill Brace, Charlottesville, VA, Robert Lee Jenkins, Jr., Bynum & Jenkins, Alexandria, VA, for Petitioner.

Donald Richard Curry, Pamela Anne Rumpz, Esquire, Office of The Attorney General, Richmond, VA, for Respondent.

***ORDER***

LEE, District Judge.

THIS MATTER comes before the Court on the implementation of the Petitioner's DNA testing plan in this habeas corpus proceeding.[1] On March 18, 2002, the Court directed the parties to comply with the September 11, 2001, Order by this Court instructing the parties to jointly submit a single memorandum setting forth the terms of the DNA testing plan they agreed to and a separate memorandum identifying the issues that remained in contention by March 29, 2002. *See Cherrix v. True*, CA No. 00–1377, Order (E.D.Va. March 18, 2002). Implementation of the DNA testing plan had been delayed due to difficulties with ascertaining the appropri-

---

1. For some context on the long road that has led to this point, the Court refers the reader to the "Background" section in *Cherrix v. True*, 177 F.Supp.2d 485, 488–91 (E.D.Va.2001).

ate biological evidence for testing. *See id. See also Cherrix*, 177 F.Supp.2d at 489–491. The parties complied with the March 18th Order and on March 29, 2002, submitted the two memoranda.

On April 18, 2002, the Court held a hearing on the issues identified by the parties remaining in contention. One of the most divisive issues was the laboratory that would perform the DNA testing. The Respondent vehemently opposed the Petitioner's selection of Forensic Science Associates, under the helm of Dr. Edward T. Blake, whereas the Petitioner did not approve the Respondent's choice—Virginia's Division of Forensic Science. At the hearing, the Court asked counsel for the Petitioner if they would be amenable to the alternative of Orchid Cellmark (formerly Cellmark Diagnostics) or another private laboratory conducting the testing. Counsel responded that they could not answer the question without first consulting with co-counsel Peter Neufeld. The Court instructed counsel to submit a supplemental memorandum addressing the issue. Shortly thereafter, the Petitioner submitted a filing explaining that Mr. Neufeld steadfastly believed that Forensic Science Associates was the only appropriate laboratory to perform the testing in this case.

After reviewing the submissions of the parties and hearing oral argument on the matter, the Court adopts the following DNA testing plan in this matter:

1. The biological evidence to be tested in this case shall consist of:

    A. Three anal swabs that are in the custody of Samuel J. Cooper, Jr., in his capacity as Clerk of the Circuit Court of Accomack County. The swabs are marked as Commonwealth's Trial Exhibit 18;

    B. Reference samples of botanical debris containing bloodstains of Ms. Van Hart's blood that are in the custody of the Clerk of the Circuit Court of Accomack County. The samples of botanical debris are labeled as Commonwealth's Trial Exhibits 16A & B;

    C. Two anal slides that are in the physical custody of the Chincoteague Police Department. The slides are presently stored inside a manila envelope identified as Item # 30 and labeled "physical evidence recovery kit for victim." Within the manila envelope, the two anal slides are packaged in a single cardboard mailer marked "anal swabs," "T–40–94 Tess Van Hart," "LB", "TL 94–771–30," and "DAP;" and

    D. Reference sample of biological material from Ms. Van Hart, the test tube containing residue of Ms. Van Hart's blood. The test tube is in the physical custody of the Chincoteague Police Department. It is presently stored inside a manila envelope identified as Item # 30 and labeled "physical evidence recovery kit for victim." Within the manila envelope, a test tube containing the blood reference sample is packaged, along with its stopper, in a plastic bag labeled "Tess Van Hart," "T–40–94," "1–28–94," "DAP," and "TKO."

2. The STR Testing shall be performed by Orchid Cellmark. Orchard Cellmark is a well-respected DNA laboratory that has performed DNA testing in several criminal cases before this Court.[2] A neutral, third-party labora-

**2.** Cellmark Diagnostics was recently acquired by Orchard Biosciences. Orchid Cellmark was one of the first laboratories in the world to offer DNA identity testing and is accredited by the American Association of Blood Banks for biological relationship testing. Orchid

tory will assuage any concerns either party may have with the other's selection for lab testing. Orchard Cellmark is also located in nearby Germantown, MD, as opposed to Forensic Science Associates, which is located in Richmond, California.

3. The biological evidence to be tested shall be transmitted to the Orchard Cellmark laboratory for visual evaluation no later than 14 days after entry of this Order.

4. The Accomack County Circuit Court and the Chincoteague Police Department shall separately ship the evidence by Federal Express, Priority Overnight Service, in Federal Express boxes, and by no other means.

5. Each sending agency will charge the cost of shipment to the Virginia Capital Representation Resource Center. Upon sending the materials to Orchard Cellmark, the sending agency will promptly send a legible facsimile of the corresponding Federal Express Airbill to counsel for all parties:

A. Pamela A. Rumpz, counsel for the Warden;

B. Robert L. Jenkins, Jr., counsel for Mr. Cherrix; and

C. Michele J. Brace, counsel for Mr. Cherrix.[3]

6. The Accomack County Circuit Court and the Chincoteague Police Department shall review Orchid Cellmark's Guidelines for the Collection, Packag-

ing, Storage, and Shipment of Evidence for DNA Tests attached to this Order as Appendix A, and available at http:// www.cellmark-labs.com/pdf/coll _proc.pdf. When preparing the evidence for shipment, the Accomack County Circuit Court and the Chincoteague Police Department shall comply with the Orchid Cellmark Guidelines to the fullest extent possible.

7. The Chincoteague Police Department shall take additional steps to protect the anal slides and the test tube with the victim's reference blood sample by:

A. Ensuring that the cardboard mailer remains securely closed in transit and use additional packing materials inside the box to cushion the evidence;

B. Taping the mailer closed or wrapping a rubber band around both dimensions of the mailer and then placing the mailer in a labeled envelope before encasing it in the shipping box; and

C. Placing the test tube containing the victim's reference sample, the purpose stopper and the piece of paper into a zipper-lock bag or labeled envelope.

8. The Clerk of the Accomack Court shall be responsible for ensuring that the anal swabs and the botanical de-

---

Cellmark currently performs the STR analysis of thousands of backlogged sexual assault kits from various law enforcement agencies through out the country. These kits consist of blood standards, vaginal swabs, anal swabs, and body secretions. Orchid Cellmark also runs the only forensic DNA laboratory program in the United States offering a national pro bono DNA identification service to indigent criminal defendants, analyzing relevant physical evidence in up to six pro bono cases per year. Finally, Orchid Cellmark was also

among the first companies to provide forensic DNA training to other scientists from around the world, including a training course dedicated specifically to the interpretation of RFLP DNA test results. *See* ht tp://www.cellmark-labs.com/companyprofile.htm

3. All phone and facsimile numbers have been redacted in the instant published version of this Order.

bris samples are properly packaged and are accompanied by a transmittal letter identifying the evidence for chain of custody purposes.

9. Randy Mills, the evidence technician of the Chincoteague Police Department, shall be responsible for ensuring that the two anal slides and test tube contained the victim's blood sample are properly packaged and are accompanied by a transmittal letter identifying the evidence for chain of custody purposes. Petitioner's counsel has the option of being present as Mr. Mills packages the items or arranging for a third party to videotape the process.

10. As discussed above, the evidence shall be accompanied by a transmittal letter identifying the evidence in the box for chain of custody purposes. The letter shall also comport with Orchard Cellmark's Forensic Case Submission Letter Guidelines attached to this Order as Appendix B and available at http://www.cellmark-labs.com/pdf/CoverLetter2.pdf. Finally, the sending agencies will attach a copy of this Order to their respective transmittal letters.

11. The transmittal letter from the Chincoteague Police Department shall also reference the deposition of Edward Lewis, Chief of the Chincoteague Police Department, concerning the storage of the items in the custody of the Police Department. The Chincoteague Police Department shall include a copy of the deposition with the package and transmittal letter.

12. The evidence and accompanying transmittal letter shall be sent to:

Orchid Cellmark

Attn: Forensic Laboratory

20271 Goldenrod Lane, Ste. 101

Germantown, MD 20876

13. Upon receipt of the evidence, Orchid Cellmark will inventory the evidence and photograph the anal swabs and botanical debris. The laboratory shall take photomicrographs of the anal slides and a photograph of the test tube.

14. Orchid Cellmark shall immediately determine whether the quantity of biological material is sufficiently large to permit a division of the evidence. If Orchid Cellmark determines that the evidence can be divided, it will consult with Dr. Blake of Forensic Science Associates and Dr. Paul Ferrara of Virginia's Division of Forensic Science regarding the divisibility of the evidence and the best manner of splitting the evidence.

15. If Orchid Cellmark, Dr. Blake and Dr. Ferrara agree that the evidence is divisible, Orchid Cellmark will divide the evidence in the agreed-upon manner. Orchid Cellmark will then forward the residual share of the evidence to:

Richmond Laboratory

Division of Forensic Science

P.O. Box 999

Richmond, Va 23208–0999.

After sending the residual evidence, Orchid Cellmark shall proceed with testing.

16. If the parties disagree, they will notify the Court and counsel immediately. The matter shall be submitted to the Court for resolution, the parties shall have an opportunity to respond, and no testing shall proceed until an Order is issued by the Court regarding the divisibility of the evidence and the best manner of dividing the evidence.

17. Within 14 days of entry of this Order, Cherrix's counsel shall send

Orchid Cellmark copies of the Virginia Department of Forensic Sciences certificates of analysis dated July 21, 1994, and October 31, 1994. The July 21, 1994, certificate of analysis contains the results of the HLA Dqa test performed on the victim's blood.

18. The parties have represented that they have agreed to a medical professional responsible for collecting the reference samples from Cherrix.

19. Cherrix's counsel shall schedule with counsel for the Warden a date and time for the medical professional to collect buccal swab reference samples from Cherrix in accordance with the Department of Corrections procedures. The parties shall ensure that this collection occurs no later than 14 days after entry of this Order.

20. Cherrix's counsel and the medical professional shall appear at Sussex State I Prison at the appointed date and time and shall be present at all times relevant to the collection of the reference samples. With the Warden's consent, Cherrix may have a privileged attorney-client visit with one or both of his counsel before and/or after the collection of the buccal swab reference samples.

21. The Warden shall permit Cherrix's counsel to enter the prison for the purpose of collecting the reference samples and permit counsel to carry with them a sealed buccal swab DNA collection kit, including collection instructions, biohazard barrier gloves, sterile cotton-tipped swabs, and packaging materials. The Warden shall permit counsel to carry with them a transmittal letter for documenting the collection and chain of custody, pads of paper, ball-point pens, transparent tape, a Federal Express box, and a Federal Express Airbill.

22. The medical professional shall collect four buccal swabs, two per cheek. The swabs shall be permitted to air dry for approximately 15 minutes, and then placed directly inside a manila envelope. The medical professional shall then sign the transmittal form indicating that he collected the buccal swabs from Brian Lee Cherrix on that date. The manila envelope shall be sealed with tape, labeled, and placed in a Federal Express box along with the transmittal letter for chain of custody purposes. Cherrix's counsel shall seal the Federal Express box and affix the Federal Express Airbill. The box shall be addressed to Orchid Cellmark. *See* discussion *supra* ¶ 12.

23. The prison officer assigned to stand guard during the meeting between Cherrix and the medical professional shall observe all the foregoing, and the prison officer shall affirm that he observed the proceedings by signing his name on the Airbill on the line marked "Your Internal Billing Reference" after the package is sealed and affixed.

24. After the Federal Express box is sealed and labeled, a prison officer shall immediately accompany Cherrix's counsel as they bring the box to the place within the prison where Federal Express packages are collected. The package shall remain in the Warden's custody until collected by Federal Express. Cherrix's counsel shall be responsible for arranging for timely collection by Federal Express. The manner for shipping shall be identical to that described above for the forensic evidence. *See* discussion *supra* ¶¶ 4–5. Cherrix's counsel shall retain a copy of the Federal Express Airbill and shall promptly fax a copy

of the Airbill to all counsel at the numbers listed in paragraph 5 above.

25. Upon receipt of all the forgoing materials and certificate of analysis, Orchid Cellmark shall test the evidence in two stages. The first stage of testing shall involve an examination of the anal swabs, the anal slides, the victim's reference sample in the test tube and the botanical debris. These analyses will be conducted blindly without knowledge of Brian Lee Cherrix's genetic profile.

26. In the first stage of testing, Orchid Cellmark shall perform PCR based DNA analysis of the STR genes from the swabs and/or slides. The lab shall compare the victim's reference sample profile with the profile of the victim as reported in the October 31, 1994, certificate of analysis as an internal check on the validity of the victim's references sample.

27. Even if the evidence has been divided, Orchid Cellmark shall consume as little of the forensic evidence and reference samples as reasonably necessary to the testing process.

28. In the second stage of the testing, Orchid Cellmark shall conduct a PCR based analysis of the STR genes of the newly collected reference samples from Brian Lee Cherrix. Using these samples, the lab shall extract and amplify Cherrix's DNA and obtain his profile. The lab shall then compare this profile against the profile, if any, that was obtained from the anal swabs and/or anal slides.

29. At the conclusion of STR testing, Orchid Cellmark shall notify the following parties via telephone of the final results of the test:

A. Pamela A. Rumpz, counsel for the Warden;

B. Robert L. Jenkins, Jr., counsel for Mr. Cherrix;

C. Michele J. Brace, counsel for Mr. Cherrix; and

D. The Chambers of the Honorable Gerald Bruce Lee.

30. Orchid Cellmark shall provide a written report concerning the test results to counsel and the Court within 30 days of notification. The report shall be placed in the public file and not under seal.

31. If at the conclusion of STR testing, Orchid Cellmark determines that it would be detrimental to ship any particular item of evidence or any material derived from that evidence, it will consult with Dr. Blake and Dr. Ferrara regarding the disposition of the evidence. Orchid Cellmark, Dr. Blake, and Dr. Ferrara shall then inform the Court by facsimile of their positions and the Court shall issue an Order concerning the disposition of the evidence.

32. At the conclusion of the STR testing, Orchid Cellmark shall retain the evidence until Cherrix has determined whether he will elect mitochondrial DNA testing. Cherrix shall make this determination within 10 days of receipt of the written report issued by Orchid Cellmark regarding the conclusive STR testing results. If Cherrix elects mitochondrial testing, the parties shall brief the issue and schedule oral argument. If the Court then allows mitochondrial testing, Orchid Cellmark shall forward the evidence to an as of yet unidentified lab within 7 days of this Court's Order instructing it to do so.

33. If Cherrix does not elect mitochondrial testing, Orchard Cellmark shall send the materials to Virginia's Division of Forensic Science within 7 days

of Cherrix's decision to forgo mitochondrial testing. Similarly, if the Court declines to permit Cherrix to go forward with mitochondrial testing, Orchard Cellmark shall send the materials to Virginia's Division of Forensic Science within 7 days of the entry of this Court's Order denying mitochondrial testing.

34. Virginia's Division of Forensic Science shall be the custodian of the residual share of the biological evidence for purposes of storage, preservation, and retention.

35. The Commonwealth and its officers retain the discretion to perform any DNA or other tests on this evidence without first obtaining permission from this Court.

36. Within 7 days of receiving the forensic materials for testing, Orchid Cellmark shall contact the Court by phone to confirm that it will agree to perform the testing and proceed with the testing in accordance with the parameters set forth in this Order. If Orchid Cellmark declines to perform the testing, then it shall retain possession of the materials until the Court issues a subsequent Order directing Orchard Cellmark to transmit the materials to another lab.

37. Counsel for Cherrix shall contact Kelly Gilbert to arrange payment for Orchard Cellmark's services.

The Clerk is directed to send copies of this Order to all counsel of record.